Good morning, your honors. Stephen Rosales on behalf of Plaintiff Appellate and Benjamin Moua. The issue in this case resolves around step three of the five-step sequential disability analysis that the Commissioner of the Social Security uses, or that the ALJs use during a hearing. Specifically at step three, the Commissioner refers to what is called the listings of impairments, or the listings as a shorthand, to determine whether or not someone qualifies for those physical and or mental impairments that, if an individual has certain test results or medical criteria, they're presumed or automatically found disabled. In this case, the listing that's involved is Listing 12.05, specifically 12.05 Section C. The Commissioner has described this listing as the intellectual disability listing. That's a change that the Commissioner made. Let me get to the heart of this a bit. Yes, your honor. You're relying on the opinion of Dr. Nolan? Correct. For one of the prongs of the analysis that establishes that there is another impairment, yes, your honor, the physical consultative examiner. And the ALJ disregarded the opinion of Dr. Nolan? That's correct, your honor. And Dr. Nolan said that MUA should be able to lift and to carry 40 pounds occasionally and 15 pounds frequently.  And the ALJ disregarded that opinion, and his reason was that there was no evidence in the record that supported that conclusion? I don't think that the ALJ is a qualified yet – it's a qualified affirmative response to your question, your honor, in the sense that I don't think that the ALJ did disregard that opinion, but I don't think he ever specifically articulated a specific reason for rejecting those lifting and carrying limitations. But, yes, the ALJ did not agree with, in total, Dr. Nolan's opinion. Well, he said that these restrictions are not supported by consultative examination findings or confirmed by other treatment records. And then he quotes from Dr. Nolan's records, which say a good range of motion, strength in all muscle groups, normal sensory and reflexivity, no physical limitations in spite of his obesity. That's what the ALJ relied on to say that Dr. Nolan's records didn't support the opinion he gave at the end. Is that the issue in the case? It is one of the issues. If Dr. – if the ALJ's rejection of Dr. Nolan is correct, then Mr. Mao doesn't meet or – well, doesn't satisfy one of the criteria of listing 12.05C. In order to have 12.05C, among the other two things, you must have some other physical or mental impairment that imposes significant limitations. And in – at the district court, I argue that Dr. Nolan's opinion provides that other impairment to satisfy one of those prongs. If this court finds that the ALJ, as affirmed by the district court, properly rejected Dr. Nolan's opinion, then the decision must be affirmed. But if Dr. – That's where I started. Right. That's the hurdle you have to overcome. Correct. And so why is the ALJ wrong in disregarding Dr. Nolan on the basis that his conclusion at the end isn't supported by the reports he made? Well, I tried in my opening brief to demonstrate that the ALJ described that the – on one aspect, that the range of motion in various extremities, the neck and the back, the ALJ described it as normal. And while – and Dr. Nolan doesn't say whether it's normal or not. He just provides his exam findings and doesn't say the range of motion is or is not normal. So the ALJ has no medical basis to make that determination. I provided a site to a – to an Internet website that describes the range of motion as normal and at a level that's different than Dr. Nolan. And so that what Dr. Nolan has done is Dr. Nolan examined, finds some limitation in the range of motion and describes in his assessment of the ability to function that Mr. Mao would have some or slight, I think is what Dr. Nolan used, postural limitations in addition to the lifting and carrying limitations. And so I think that the ALJ, without citing to any other treating or examining source, simply just glosses over the fact that Dr. Nolan – Dr. Nolan doesn't say that Mr. Mao is normal across the board. He has some normal physical findings on examination. And he has some other non-normal findings on examination. And I think that those non-normal examination findings is what led to the restrictions that he's imposed. But the ALJ doesn't say I've looked at this report from another examining physician or this description from a treating physician that says that Dr. Nolan is wrong or that Dr. Nolan is incorrect in assessing the limitations. There is no other RFC or no other description of Mr. Mao's physical limitations from a doctor who's actually examined him or treated him in this record. And so the ALJ simply chooses to discard Dr. Nolan without the articulation that's necessary under the long-standing case law, most often cited as the Lester case that's been discussed. His opinion was captivated by a consulting doctor. Dr. Nolan was a consulting doctor, yes. And no other doctor disagreed with Dr. Nolan's opinion? There was a review of the medical file in this record that didn't perform an examination that felt that in interpreting Dr. Nolan's opinion, it would lead to a non-severe physical impairment. So that's the consulting doctor. No, no, that's the state agency review of the medical file. The government will – That's what they call – Right. The government will usually send someone to an examination, either physical or mental or sometimes both. And once that examination comes in, then they will have an in-house physician review the complete file and either agreed with, I'll agree with the CE, I disagree, or somewhere in between. Sometimes that non-examining medical record review occurs sometimes before and can occur after. In this case, it occurred after, and that's at page 129 to 136 in the record, where a doctor who didn't examine Mr. Mouw just simply reviewed this record, including Dr. Nolan's opinion, and felt that the – he didn't say Dr. Nolan was wrong. He just interpreted Dr. Nolan's findings to be non-severe. And what I argue at the district court and before this court is that when Dr. Nolan says that Mr. Mouw has limitations, I think in this case 40 pounds occasionally, 15 pounds frequently, under regulations, that's consistent with somewhat of a bit of a reduced medium work. Medium work is usually in Social Security 50 pounds occasionally and 25 pounds frequently. And the regulations say that a medium lifting capacity is a severe – is consistent with a severe impairment. It sounds like it's a lot, but it does reduce substantially the ability to perform some work activity. And so I've cited in the record at 20 CFR 416-967 that Dr. Nolan's imposition of even a medium level or consistent with medium level lifting limitations produces that non-severe, that significant limitation that gets Mr. Mouw past the non-severe Step 2 analysis and provides at Step 3 that other additional impairment. And so I'll reserve my time with my last point I wanted to make is that Dr. – well, I'll reserve it. Thank you. Good morning, Your Honors. Elizabeth Feer for the Acting Commissioner of Social Security. Carolyn Colvin. The ALJ properly rejected Dr. Nolan's indication that the claimant would be limited in lifting in any way. He found it inconsistent with the doctor's own examination findings and inconsistent with anything else in the record. So he gave two valid reasons for disregarding that lifting estimation. And if you look at Dr. Nolan's actual findings about range of motion, he actually says in spite of his obesity, his range of motion was good. That's at 127. That's no impairment. And then the claimant has full strength, no neurological deficits. Essentially, Dr. Nolan made an estimation of how much this claimant could lift, but it's not based on anything. Because he specifically only diagnosed obesity and hypertension. He specifically said both of those conditions resulted in no limitations. The ALJ properly rejected it. Two state agency reviewing doctors looked at the whole record and concluded the claimant had no severe physical impairment. You have to have another impairment to satisfy the requirements of listing 1205C, and we just don't have it in this case. So we don't get past that hurdle. The claimant doesn't meet the listing, and he's identified no error. So if you have any questions, I'm happy to answer them. Okay. Thank you very much. But you won't need much time for what some of us might consider a proper rebuttal. Well, unfortunately, the government's counsel didn't give me much to work with. But the best I had, the focused rebuttal that I have, Your Honor, is that, Mr. Romao is 5'8 and well over 300 pounds. So when Dr. Nolan says he's pretty good in spite of his obesity, he's not saying that he is completely normal. He's simply saying that in the context of my limitations, he's doing okay for a guy who's 5'8 and 330 to 350 pounds. That doesn't mean he's completely limitation-free. Additionally, Dr. Nolan did mention that there was a fourth limit or a second physical limitation, and that was hypertension. And regardless of whether or not the obesity is causing any limitations or not that we can divine from Dr. Nolan's opinion, he doesn't say in spite of his obesity and hypertension. He says in spite of his obesity. So even if we exclude obesity as causing any limitations, Dr. Nolan could easily have still imposed a lifting limitation as a result of a hypertensive condition, which he describes as present. And the government doesn't respond to that type of limitation. Again, Dr. Nolan examined Mr. Romao, found some limitations, imposed those limitations, which the regulations find are consistent with a severe impairment and imposing an additional limitation. And therefore, as articulated in the briefs, we would submit that Mr. Romao does meet or equal 1205C in this matter. Thank you. His charges will be submitted. The Court will stand at recess for the day.
judges: Farris, Reinhardt, Tashima